IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DANIEL FORD, | : |
|       Plaintiff, | : |
| v. | : Case No. 5:23-cv-00019-MTT-CHW |
| Warden TRACY JEFFERSON, *et al.*, | : Proceedings Under 42 U.S.C. § 1983 |
|       Defendants. | : Before the U.S. Magistrate Judge |

## ORDER AND RECOMMENDATION

Plaintiff Daniel Ford, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement in Central State Prison. (Doc. 1, 14). Defendants filed a motion for judgment on the pleadings citing Plaintiff's failure to exhaust. (Doc. 42). Following Plaintiff's response to the motion (Doc. 47), the Court scheduled a hearing on the issue of exhaustion. (Doc. 51). After Plaintiff supplemented his response as directed and included a grievance receipt (Doc. 53), Defendants filed a motion to partially withdraw their motion. (Doc. 54). Following an evidentiary hearing, the Court **GRANTS** Defendants' motion to partially withdraw their motion on the pleadings (Doc. 54) and **RECOMMENDS** that the remaining portion of Defendants' motion for judgment on the pleadings (Doc. 42) be **DENIED**.

## BACKGROUND

Plaintiff brought this action on January 8, 2023, alleging several issues arising from his confinement at Central State Prison (CSP). (Docs. 1, 14). Following screening of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court allowed certain claims to proceed, including claims that Defendants were deliberately indifferent to Plaintiff's safety based upon a June 4, 2021 assault and that placing him in segregation without the proper procedural protections violated his due

1

process rights. (Docs. 4, 15). Defendants filed a motion for judgment on the pleadings on the grounds that Plaintiff failed to file a grievance regarding his claims and, thus, failed to exhaust the administrative remedies available to him. (Doc. 42). Plaintiff responded by arguing that he had receipts for grievances filed after the assault and while he was in segregation. (Doc. 47). The Court set a hearing on the issue of exhaustion and ordered Plaintiff to supplement his response with the grievance receipts. (Doc. 51). Plaintiff supplemented with the one grievance receipt he had from July 2021 (Doc. 53-1), which caused Defendants to further search Plaintiff's grievance history. (Doc. 54). The previous grievance coordinator searched her email and found two grievances that Plaintiff had submitted to prison staff in July 2021 but were never uploaded to the system, processed, or otherwise reflected on Plaintiff's grievance history. (*Id.*) Because one of these grievances addressed Plaintiff's assignment to segregation, Defendants moved to withdraw their exhaustion defense as to Plaintiff's due process claim. (*Id.*) The Court proceeded with the evidentiary hearing scheduled for November 16, 2023.

The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. …Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1082-83 (internal citations omitted).

## Grievance Procedure

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02. (Doc. 42-2, Ex. A). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id*. at 8).[1] Prisoners may file outside of the 10-day window if they show good cause. (*Id*.). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id*. at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id*. at 11). On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days. (*Id*. at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id*. at 15).

---

[1] The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

CSP is one of four prisons piloting an electronic grievance system, JPay, where offenders submit their grievances electronically through a kiosk or tablet. If the system is down or offenders are unable to electronically submit a grievance, paper grievances are used. (Doc. 42-2, p. 3, ¶ 8; p. 5, ¶ 15).

## ANALYSIS

Defendants originally moved for judgment on the pleadings citing the PLRA's exhaustion requirement. (Docs. 42). They argued that because Plaintiff did not file any grievances about the incidents underlying his complaint, he failed to exhaust his available administrative remedies. (*Id.*) Defendants have since moved to partially withdraw their motion (Doc. 54), which is granted in this order. However, the record before the Court does not support Defendants' exhaustion argument as to Plaintiff's remaining claims. Therefore, Defendants' motion for judgment on the pleadings should be denied.

Determining whether dismissal is appropriate requires applying the test outlined in *Turner* to determined whether Plaintiff failed to exhaust the administrative remedies available to him. In first considering whether dismissal for failure to exhaust is appropriate under *Turner*'s step one, a court must first consider all the alleged facts construed in favor of Plaintiff when the facts conflict. Plaintiff alleges that he filed grievances regarding the matters in his complaint and that he appealed at least one of them when the grievances went unanswered. (Docs. 1; 47; 53). He believes the grievances were not entered into the system. *See* (Doc. 1, p. 3). Construing the pleadings in Plaintiff's favor, his claims survive under step one of *Turner*. Under step two of *Turner*, the record shows that Plaintiff's claims also survive Defendants' exhaustion argument.

Under *Turner*'s second step, any disputed facts must be examined to determine if Plaintiff exhausted the available administrative remedies prior to filing suit. In support of his motion for

judgment on the pleadings and at the hearing, Defendants suggest that nothing in the record shows that Plaintiff grieved the June 4, 2021 assault or appealed the lack of response as alleged. They point to Plaintiff's grievance history and the testimony of witnesses that the only grievances Plaintiff filed were the two unprocessed grievances from July 27, 2021. Because no other grievances, in electronic or paper form, were found, Defendants argue that Plaintiff could not have properly exhausted his deliberate indifference claims. Defendants' argument, however, rests on an unreliable record that cannot support a finding in their favor under step two of *Turner*.

Defendants presented the testimony of three witnesses from CSP at the evidentiary hearing: Tyreek Hudgins, a counselor; Deputy Warden Pashion Chambers, the former Chief Counselor and Grievance Coordinator; and Candace Piersaul, the current Chief Counselor and Grievance Coordinator. The witnesses explained that for the time period underlying Plaintiff's complaint, June to August 2021, CSP used JPay, a pilot electronic kiosk system for submitting, processing, and storing grievances. Inmates were to submit grievances electronically through kiosks or tablets. Paper grievances would still be used when a kiosk was down, an offender's kiosk PIN did not work, or an offender, like Plaintiff, was in segregation and had no access to a kiosk. In those instances, inmates were to submit paper grievances to counselors, such as Mr. Hudgins, who would sign and date the grievance receipt for the inmate to retain. Because JPay required even paper grievances to be processed electronically, a counselor would type the grievance text verbatim into an email, send the email to the grievance coordinator to copy and paste the grievance text into JPay, and then submit the paper grievance to the coordinator for scanning into the system or for physical filing in the coordinator's office.

In Plaintiff's case, this system failed. The record and testimony show that on July 27, 2021, Mr. Hudgins submitted two of Plaintiff's grievances by email to Deputy Warden Chambers. (Doc.

54-2, p. 6, 8). Chambers failed to upload the emails into JPay, which means the grievances were never processed and are not reflected on Plaintiff's grievance history. The record also shows that the paper grievances were not retained. Deputy Warden Chambers and Ms. Piersaul testified that counselors were supposed to give the paper grievance to the grievance coordinator, either for scanning or for retention in a physical folder, after emailing the grievance text. Mr. Hudgins, however, could not recall with certainty what happened to Plaintiff's paper handwritten July 2021 grievances. Mr. Hudgins suggested that if no one asked for the paper grievances, he likely shredded them. This systemic breakdown meant that when Ms. Piersaul prepared the declaration in support of Defendants' motion for judgment on the pleadings (Doc. 42-2), she found no grievances either in JPay or in the paper file where grievances are kept in her office. The two grievances now acknowledged by the Defendants were found later, when, in preparing for the evidentiary hearing in this case, Defendants searched their email records and found the two emails from Mr. Hudgins memorializing Plaintiff's now-lost paper grievances.

Because one of the July 27, 2021 emailed grievances complained about Plaintiff's placement in segregation, Defendants moved to withdraw their exhaustion defense as to Plaintiff's due process claim. (Doc. 54).

At the hearing, Defendants maintained that they were nevertheless entitled to judgment on the pleadings as to Plaintiff's remaining deliberate indifference claims because, as the record showed, Plaintiff filed no grievance following the assault on June 4, 2021. Plaintiff's testimony, however, is evidence that the Court must consider. Plaintiff testified that not only did he file a paper grievance about the assault while he was in segregation, but he also filed an appeal after 40 days passed without a response. Plaintiff testified that he gave his appeal to Mr. Hudgins on July 12, 2021, but that Mr. Hudgins failed to give him a receipt. He testified that he had filed many

6

more grievances that were not reflected on his grievance history. Indeed, Plaintiff's extensive grievance history shows a striking absence of grievances from CSP in 2021, (*see* (Doc. 42-2, p. 46, 49)), lending further credence to Plaintiff's testimony that he filed grievances in during this time period that also went unrecorded and unprocessed.

Defendants' suggestion that Plaintiff failed to file *any* grievance related to his complaint is not credible, especially in a case where Plaintiff's testimony about filing grievances, in at least one instance, was shown to be true. Moreover, Defendants only endeavored to discover Plaintiff's entire grievance record *after* the Court scheduled a hearing and Plaintiff supplemented the record. As established by Defendants' own witnesses, at least two of Plaintiff's grievances were not recorded in the system, processed, or retained. Defendants urge this Court to credit a broken and inaccurate record keeping system in order to show that no other grievances are absent from Plaintiff's grievance history. The CSP record keeping system – at least as far as Plaintiff's grievance history is concerned – is not credible, and relying upon it cannot support Defendants' argument that Plaintiff failed to exhaust his administrative remedies. Given the complete failure of record-keeping established at the hearing, along with Plaintiff's extensive history of filing grievances before and after the JPay system was in use at Central State Prison, it is more likely than not that Plaintiff would have filed a timely grievance about the very serious assault that forms the basis of this case, which landed him in the hospital. Defendants' motion fails at *Turner*'s second step, and their motion for judgment on the pleadings (Doc. 42) should be denied.

## CONCLUSION

Based on the foregoing, Defendant's motion to partially withdraw their motion for judgment on the pleadings (Doc. 54) is **GRANTED**, and it is **RECOMMENDED** that the remainder of Defendants' motion for judgment on the pleadings (Doc. 42) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error. The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 17th day of November, 2023.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge